JASPER EDDLEMAN, Appellant, *vs.* JACOB M. EDDLEMAN
*et al.* Appellees.

*Opinion filed June 18, 1913.*

LIMITATIONS—*when rights of co-tenants are subject to statute.*
Where tenants in common convey to a co-tenant eighty acres of
land which they know embraces a small tract not covered by the
legal description in the deed but which has for many years been
fenced in with and treated as a part of the land they intended to
convey to the grantee, the grantee's possession of the tract is not
the possession of his co-tenants but is adverse to them, and their
rights are subject to the Statute of Limitations.

APPEAL from the Circuit Court of Union county; the
Hon. WILLIAM N. BUTLER, Judge, presiding.

WILLIAM D. LYERLE, for appellant.

HILEMAN & CRAWFORD, and JAMES LINGLE, for ap-
pellees.

Mr. JUSTICE FARMER delivered the opinion of the court:

This is an appeal from a decree of the circuit court of
Union county dismissing for want of equity a bill filed by
appellant for the partition of a tract of land described by
metes and bounds and containing 2.11 acres, situated in the
north-west corner of the east half of the south-west quar-
ter of section 35, township 13, south, range 1, east of the
third principal meridian. The bill alleged Jacob Eddleman,
Sr., died intestate, seized in fee of said 2.11-acre tract and
other lands, in 1875; that he left a widow and complain-
ant and several other children named, as his only heirs;
that the widow and some of the children have since died,
and that by the death of some and by conveyances by other
of the heirs of Jacob Eddleman, Sr., complainant and de-
fendants, Jacob M. Eddleman and Tobias Eddleman, sons,
and Thomas Eddleman, a grandson, of said Jacob Eddle-

man, Sr., became .seized in fee of said 2.11 acres in the following proportions: Complainant of an undivided five-ninths, Jacob M. Eddleman of an undivided two-sevenths, Tobias Eddleman of an undivided one-seventh and Thomas Eddleman of an undivided one sixty-third part.· The bill prays for partition. Jacob M. Eddleman answered the bill, averring, in substance, that in a partition and settlement among the heirs of Jacob Eddleman, Sr., in 1882, they conveyed to Calvin Eddleman for his share of his father's land, and also in consideration of his agreement to take care of the widow during her life and bury her at her death, the west half of the south-west quarter of section 35, township 13, south, range 1, east of the third principal meridian; that at the time of making the deed it was intended to include and convey the 2.11-acre tract and to exclude a two-acre tract that had been previously conveyed off the south part of the east side of said west half of.the south-west quarter.to one Sowers, but that the scrivener who wrote the deed omitted to mention and describe said two small tracts. The answer avers that said 2.11-acre tract has been for more than fifty years, and still is, fenced and enclosed with the said west half of the south-west quarter; that at the time the deed was made to Calvin Eddleman the possession of the 2.11-acre tract was delivered to him; that ·he remained in undisputed possession of and claimed to own it until his death, in 1891; that after his death his heirs were in possession, claiming ownership, until December 28, 1908, when they conveyed it to respondent, since which time he has been in possession claiming ownership of said tract.

The proof shows that Jacob Eddleman, Sr., at the time of his death owned other lands than the west half of the south-west quarter of section 35 and the small tract in controversy, and that in 1882 there was a voluntary settlement or partition among the heirs, by which they agreed to, and did, convey to the son Calvin, for his share of his father's

land, and the further consideration of his agreement to support and care for his mother during her lifetime, the home place where Jacob Eddleman, Sr., and his family resided. Prior to 1851 Jacob Eddleman, Sr., owned the west half of the south-west quarter of section 35 and a man named Sowers owned the east half of the south-west quarter of section 35. There was a spring in the north-west corner of Sowers' eighty, and in 1851 Eddleman exchanged with Sowers a small tract of two or more acres off the south part of the east side of the west half of the south-west quarter for the 2.11-acre tract in controversy. Eddleman at once took possession of the 2.11 acres, but in building the fence on the east line it ran in a north-east and south-west direction, and at the south line of the tract the fence was located west of the east line and at the north line it was east of the line, so that as fenced it included at the north end more land than Eddleman had acquired from Sowers, and at the south end part of the tract was left in Sowers' enclosure. As fenced by Jacob Eddleman, Sr., this 2.11-acre tract formed a part of his home place and was enclosed with his land in the west half of the south-west quarter. There was a spring on this small tract and Jacob Eddleman, Sr., built and maintained a milk-house thereon, and the tract was used as a horse lot in connection with the other buildings upon or immediately adjacent to said tract. Sowers took possession of the land he acquired of Jacob Eddleman, Sr., in exchange for the tract in controversy, and he and his successor in title have remained in possession until the present time. The respective enclosures of Eddleman and Sowers, from the time the exchange was made, were in accordance with the lines as they understood them to exist after the exchange. The 2.11-acre tract obtained by Eddleman from Sowers in the north-west corner of the east half of the quarter section was intended to be thirteen rods wide east and west by twenty-six rods long, but as fenced by Eddleman it was less than thirteen rods

wide at the south end and more than thirteen rods wide at the north end.

In 1907 complainant bought twelve acres off the north end of the Sowers eighty, and when it was surveyed the west line of the eighty was located west of the east line of the Eddleman enclosure. Complainant claims that up to that time it was not known that the Eddleman enclosure included any part of the east half of the south-west quarter; that the conveyance of the heirs to Calvin Eddleman, which described only the west half of the south-west quarter, was intended only to convey said west half and was not intended to convey any land owned by Jacob Eddleman, Sr., in the east half of the said quarter section. He does not deny that Calvin Eddleman took possession of the tract in controversy and that he and those claiming under him have had possession of it for more than twenty years, but he contends that Calvin Eddleman's possession was that of a tenant in common, was for the benefit of his co-tenants, and was not adverse to them. If the facts proven sustain that contention the decree was erroneous and would have to be reversed, but we do not think appellant's position is sustained by the proof. It is probably true that neither Calvin Eddleman nor any of the other heirs knew the exact location of the line between the eighty-acre tracts, but it could not have escaped their notice and knowledge that the dividing line between Sowers and Jacob Eddleman, Sr., was not the line dividing the two eighties, for Eddleman had enclosed a part of the north end of the east eighty and Sowers part of the south end of the west eighty. After the exchange between them each owned substantially eighty acres in the quarter section, and we think the proof clearly supports the conclusion that the deed made by the heirs to Calvin Eddleman was understood and intended by both grantors and grantee to convey to Calvin all the land owned by his father in that quarter section. He did not, therefore, take and continue in possession of the land in

controversy as a tenant in common for the benefit of his co-tenants, but he took it claiming to own it by virtue of the deeds from his co-tenants in common and his possession was adverse to them until his death, and his heirs who succeeded to his title continued in adverse possession until they sold to defendant Jacob M. Eddleman, and he has continued in possession under claim of ownership to the present time. The period of adverse possession under claim of ownership of the tract of land in controversy has been nearly thirty years. This, under all the authorities too familiar to require their citation, is a complete bar to the claim of the complainant.

The decree of the chancellor dismissing the bill for want of equity was right, and it is affirmed.    *Decree affirmed.*